IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78614-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| S.G., | ) | |
| | ) | |
| Appellant. | ) | FILED: October 28, 2019 |
| | ) | |

ANDRUS, J. — S.G. appeals the denial of his motion to restore his firearm rights after he completed a juvenile deferred disposition for second degree malicious mischief, and the juvenile court vacated his conviction. He contends that the juvenile court erroneously concluded that the firearms statute, RCW 9.41.040, prohibits those with dismissed juvenile deferred dispositions from owning a firearm. Alternatively, S.G. argues his firearm rights were "automatically" restored when his underlying conviction was vacated. We disagree with S.G.'s arguments and affirm.

## FACTS

Seventeen-year-old S.G. admitted to second degree malicious mischief, a class C felony, after intentionally damaging a vehicle owned by Thomas Rechak and Aarin Morris. Two of S.G.'s friends had been targeting Rechak and Morris and had enlisted their friends, including S.G., to help them destroy Rechak and Morris's personal property. Many of these incidents were caught on video by a

neighbor's home surveillance system. On May 31, 2017, the surveillance system caught S.G. vandalizing Rechak's 1994 Ford van. The video showed S.G. scratching the paint on the driver side and hood of the vehicle, causing over $2,000 in damage. The juvenile court found that S.G. was solely responsible for the damage.

On November 28, 2017, S.G. pleaded guilty in exchange for a deferred disposition under RCW 13.40.127.[1] The juvenile court ordered a six month deferred disposition. Under the stipulated terms of the deferred disposition, S.G. lost his right to possess a firearm. S.G. was also told that his right to possess a firearm during the deferral period was "gone until you come back to court and ask for it back," to which S.G. agreed. Although S.G. turned 18 on December 22, 2017, the juvenile court retained jurisdiction over the case.

On January 11, 2018, the juvenile court ordered restitution "as a condition of disposition." It ordered S.G. to pay Rechak or Morris $2,427.38, the estimated cost of repairing the Ford van. The restitution order required S.G. to make monthly payments of $10 until he had fully repaid the restitution obligation. On May 4, 2018, the juvenile court dismissed S.G.'s juvenile deferred disposition and vacated his conviction, but the order noted that the case could not be sealed until S.G. had completed the restitution payments.

A week later, on May 11, 2018, S.G. moved to restore his firearm rights. S.G. argued that the definition of "conviction" in the firearms statute, RCW 9.41.040, did not extend to juvenile deferred dispositions. The trial court denied

---

[1] The order was amended on December 19, 2017, to correct a scrivener's error.

the motion, reasoning that a "conviction" under RCW 9.41.040, criminalizing the unlawful possession of a firearm, occurs when a person enters a plea of guilty and includes juvenile deferred dispositions. See RCW 9.41.040(3). S.G. appeals.

## ANALYSIS

Under the firearms statute, RCW 9.41.040, a person, whether adult or juvenile, may not possess a firearm "after having previously been convicted . . . of any serious offense . . . ." Subsection 3 of that same statute provides:

> Notwithstanding . . . any other provision of law, . . . a person has been "convicted", whether in an adult court or adjudicated in a juvenile court, at such time as a plea of guilty has been accepted . . . notwithstanding the pendency of any future proceedings including but not limited to sentencing or disposition, post-trial or post-fact-finding motions, and appeals. *Conviction includes a dismissal entered after a period of probation, suspension or deferral of sentence, and also includes equivalent dispositions by courts in jurisdictions other than Washington state.*

RCW 9.41.040(3) (emphasis added).

S.G. first argues that because juvenile deferred dispositions are not explicitly included in the definition of "conviction" in RCW 9.41.040(3), they are exempt from the statute. S.G. alternatively argues that his conviction ceased to be a "conviction" under RCW 9.41.040(3) when the court vacated it, and his right to possess a firearm was automatically restored. We consider each argument in turn.

We review issues of statutory interpretation de novo. State v. Dennis, 191 Wn.2d 169, 172, 421 P.3d 944 (2018). The purpose of statutory interpretation is "to determine and give effect to the intent of the legislature." Id. (internal quotation marks omitted) (quoting State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013)). This court derives the legislative intent of a statute "solely from the plain

language by considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." Id. at 172-73. Furthermore, when interpreting a criminal statute, this court gives it "a literal and strict interpretation." Id. at 172 (quoting State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). "If, after this inquiry, there is more than one reasonable interpretation of the plain language, then a statute is ambiguous and we may rely on principles of statutory construction, legislative history, and relevant case law to discern legislative intent." Id. at 173

S.G. contends that RCW 9.41.040(3) expressly includes deferred sentences in its definition of "conviction," but makes no mention of dismissed juvenile deferred dispositions. He argues that because a deferred sentence is not the same as a deferred disposition, the statute does not apply to him. We disagree.

The statute provides that a person has been "convicted," for purposes of firearm rights, when his guilty plea is accepted by either an adult or juvenile court. The second sentence of the provision states that a conviction "*includes* a dismissal entered after a period of . . . deferral of sentence." See RCW 9.41.040(3) (emphasis added). We conclude that the legislature's use of the verb "includes" in this sentence is significant. Generally, when a statute uses the language "including, but not limited to," our courts have held the objects of the phrase to be an illustrative, rather than exhaustive, list. See State v. Larson, 184 Wn.2d 843, 849, 365 P.3d 740 (2015) (statutory language 'including, but not limited to' establishes illustrative examples rather than an exhaustive list); State v. Joseph, 3 Wn. App. 2d 365, 372, 416 P.3d 738 (2018) (same). Moreover, in both normal English usage and textual decision-making, the word *include* does not ordinarily

introduce an exhaustive list. Antonin Scalia & Brian A. Garner, READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS 132 (2012). Thus, we conclude the legislature's intent is plain—the omission of dismissed deferred dispositions from the illustrative list in RCW 9.41.040(3) does not lead to the conclusion that they fall outside the scope of the statute.

In Larson, the Supreme Court held that a list of specific items "designed to overcome security systems" in a former version of RCW 9A.56.360 (retail theft), while illustrative, was nevertheless intended to limit the scope of the statute to things "similar in nature or 'comparable to' the specific terms." 184 Wn.2d at 849. If we apply the same principle of statutory interpretation as in Larson, we merely must determine if a dismissal of an adult deferred sentence is similar in nature or comparable to a dismissal of a juvenile deferred disposition. We conclude they are.

Under the Juvenile Justice Act (JJA), chapter 13.40 RCW, if a juvenile offender is found or pleads guilty to a criminal charge, his "sentence" may be set at a "dispositional hearing." RCW 13.40.130. In sentencing the offender, the court must use "disposition standards" set out in the statute absent a finding of manifest injustice. RCW 13.40.130(9); State v. K.E., 97 Wn. App. 273, 278, 982 P.2d 1212 (1999). RCW 13.40.127 gives the juvenile court the authority to defer imposing a sentence for eligible juveniles through a process described as a "deferred disposition." A juvenile offender granted a deferred disposition must plead guilty to the offense and is placed on community supervision for a period not to exceed one year. RCW 13.40.127(2), (5). At the conclusion of the specified period of supervision, if the court finds that the juvenile has successfully completed the

terms of supervision, it dismisses the case with prejudice and vacates the conviction.[2] RCW 13.40.127(9)(b). If restitution remains owing, the court must enter an order of restitution for any unpaid amount. RCW 13.40.127(9)(b)

Under the Sentencing Reform Act (SRA), adults may not defer felony convictions occurring after June 30, 1984. RCW 9.94A.575. But RCW 3.66.067 permits courts of limited jurisdiction to defer non-drug-related and non-alcohol-related sentences and "place the defendant on probation for a period of no longer than two years and prescribe the conditions thereof." Similarly, chapter 9.95 RCW permits a court to defer sentence and impose a probationary period. A deferred sentence occurs when a court adjudges a defendant guilty of a crime but stays or defers imposition of a sentence and places the person on probation. State v. Carlyle, 19 Wn. App. 450, 454, 576 P.2d 408 (1978). A deferred sentence is never imposed unless a defendant violates conditions of his probation. Id. A defendant whose sentence was deferred may move to have the information filed against him dismissed upon fulfillment of the conditions of probation. RCW 9.95.240; Carlyle, 19 Wn. App. at 455-56. Courts of limited jurisdiction may also permit a defendant on a deferred sentence to withdraw a guilty plea, enter a plea of not guilty, and dismiss the charges. RCW 3.50.320; RCW 3.66.067; State v. Haggard, 9 Wn. App. 2d 98, 103, 442 P.3d 628 (2019).

Thus, a deferred sentence for adults is comparable to a deferred disposition for juveniles. Both involve an admission of guilt, a delay in the imposition of a

---

[2] The only exception is convictions arising under RCW 16.52.205 (first degree animal cruelty). Although the juvenile court allows offenders to serve a deferred disposition for violations of the animal cruelty statute, the conviction is merely dismissed, not vacated, following a deferred disposition. RCW 13.40.127(9)(b).

sentence, a referral to probation or community supervision with conditions, an evaluation of the individual's compliance with such conditions, and a dismissal of the criminal charge at the conclusion of the probation or supervision period. Because a deferred disposition is comparable or similar in nature to a deferred sentence, the dismissal of a deferred disposition remains a "conviction" for purposes of the restoration of firearm rights under RCW 9.41.040(3).[3]

S.G. alternatively argues that even if RCW 9.41.040(3) encompasses dismissed deferred dispositions, it does not extend to convictions vacated by a juvenile court under RCW 13.40.127(9). S.G. argues that the doctrine of *expressio unius est exclusion alterius* requires the court to conclude that the inclusion of dismissed dispositions in the definition of "conviction" implies the exclusion of vacated convictions.

But this argument fails because the statute does explicitly contemplate vacated convictions and excludes only those convictions vacated based on a finding of rehabilitation or innocence. RCW 9.41.040(3) provides:

> A person shall not be precluded from possession of a firearm if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction or disposition has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

This language is almost identical to the language of ER 609(c), which makes certain prior convictions inadmissible for impeachment purposes. Under this

---

[3] Only if the statute remains ambiguous after we apply the traditional canons of construction do we apply the rule of lenity and resolve any ambiguity in a criminal statute in favor of the defendant. In re Pers. Restraint of Hopkins, 137 Wn.2d 897, 901, 976 P.2d 616 (1999); Scalia & Garner, at 197. Because we conclude the statute is not ambiguous, we need not address S.G.'s request that we apply the rule of lenity.

court's ER 609(c) case law, vacating a conviction is likely an "equivalent procedure" to a pardon or annulment, but the conviction remains admissible under ER 609(c) unless there is an explicit finding of either rehabilitation or innocence. State v. Hettich, 70 Wn. App. 586, 590, 854 P.2d 1112 (1993). By analogy, a vacated conviction would not preclude a person from possessing a firearm if the court, in vacating the conviction, explicitly found the person to be rehabilitated or innocent. We conclude the statute excludes convictions vacated because of a finding of rehabilitation or innocence, but does not exclude *all* vacated convictions. S.G. concedes the dismissal of his deferred disposition does meet the requirement of the "pardon, annulment, or other equivalent procedure" clause of RCW 9.41.040(3) because there was no finding of innocence.

S.G. argues that regardless of this language, we should hold that when the juvenile court vacated his conviction, the conviction ceased to exist, and his firearm rights were automatically restored by operation of law. There are several problems with this argument. First, convictions do not actually "cease to exist" once vacated. Under the SRA, for example, a vacated conviction may be used as an element of a crime, or, in other words, to form the basis for a determination of guilt in a later prosecution. In re Pers. Restraint of Carrier, 173 Wn.2d 791, 816, 272 P.3d 209 (2012). Under the JJA, a juvenile disposition ceases to exist only if the court both vacates the conviction *and* seals the official juvenile court record under RCW 13.50.260(6)(a). See Barr v. Snohomish County Sheriff, 193 Wn.2d 330, 339, 440 P.3d 131 (2019) (sealing juvenile court record is not expungement of the offense); Nelson v. State, 120 Wn. App. 470, 481, 85 P.3d 912 (2003) (under former RCW 13.50.050(14), when the court expunges conviction and seals juvenile records,

RCW 9.41.040 does not make it unlawful for the juvenile to carry a firearm). S.G. concedes his juvenile court file was not sealed because his restitution debt remained unpaid. RCW 13.40.127(9)(a)(iv).

Second, our analysis must acknowledge the first sentence of subsection 3 of the firearms statute, which provides that the paragraph applies "[n]otwithstanding RCW 9.41.047 or any other provisions of law." This language is known as a "superordinating" clause, "a fail-safe way of ensuring that the clause it introduces will absolutely, positively prevail." Scalia & Garner, at 127. It is a legislative directive that this provision trumps any provision in the JJA, the SRA, or our case law interpreting either statute.

Finally, RCW 9.41.040(4) sets out a procedure for individuals to petition the court to have their right to possess firearms restored. There is nothing in this provision to suggest that the procedure need not be followed in the case of a vacated conviction.

We thus conclude that the trial court correctly held that the vacation of S.G.'s deferred disposition did not automatically entitle him to the restoration of his firearm rights.

Affirmed.

Andrus, J.

WE CONCUR:

Smith, C.J.

- 9 -